Mr. Chow. Good morning, Your Honor. Good morning. Cedric Chow, on behalf of the appellant, City of Oakland. With me at council table is Barbara Parker, my co-counsel, the city attorney, as well as my colleague Kathleen Kaiser. Good morning. This case presents unique facts, unique grievances, and there's no case squarely on point. No case has addressed the issue whether a city, which admittedly does not have an interest in a property subject to forfeiture, may bring a challenge to the forfeiture under the Administrative Procedure Act. And I believe that the unique set of facts here, I'll call it the perfect storm of facts, explains the absence of case law. Normally, if a city... I don't think any city has ever challenged a medical marijuana facility seizure outside of the seizure proceeding. Isn't that a more likely explanation? Well, the explanation is normally when you have a crack house or a house where there's drug dealing, the city would applaud that. What's different in this case? One is marijuana for medical purposes. You have drug dealing at a property in a city that the city didn't challenge in a forfeiture hearing, simply put. The city does not have an interest in that property. Well, the city doesn't want to stop the drug dealing, does it? It wants the revenues from the sales of medical marijuana. The city has several discreet injuries, interests of its own. But it has no interest in stopping the activities. And therein lies the conflict between what the United States is doing here in pursuing the MREM civil forfeiture action and what the city of Oakland would like to see done, which is tell the feds to go home. We should have the timer start. You just got an extra three minutes. I would like to reserve five minutes, thank you. I'll help you. I'll go with the court. Okay. But let me address this, because it really is key to all this, which is there is no case law, and there's no case law because medical marijuana does have, in the view of many, including scientists employed by the United States of America. It's against Federal law. Right. Simply, I mean, it's against Federal law. But we're bound by the fact that it's a Schedule I controlled substance under 841A1. Well, things are changing. And let me we moved it is against the law, absolutely. Against Federal law. Against Federal law. It's not against State law. And the motion for judicial notice, which we filed, and to which we attached the 2014, December 2014 budget appropriation, it says in Section 538 specifically, no funds appropriated by the United States Congress for the Justice Department in the year 2015 shall be used to prevent any of the 32 States, in the 32 States that have now legalized medical marijuana. Are you providing a taxpayer action asking this court for injunctive relief to enforce the congressional sense that money should not be used for these enforcement proceedings? Is that what you're asking us to do? I'm not asking. That's not our posture. And was this argument in that record before the district court when it ruled on your record? Well, it was not because the legislation and appropriations just occurred a month ago. How is it proper for us to take judicial notice of something that did not inform the district court's decision? Because one of the issues, one of the issues that has been raised, and raised for the first time on appeal by the United States, is what they call prudential standing, more accurately called zone of interest analysis. Well, let's get back to the APA, because you're saying that the basis for prudential standing is an APA challenge, right? That's correct. Lexmark says, well, maybe we don't call it prudential standing, but we look to zone of interest. But more importantly, we look to a statute to see whether or not the city has standing and is recognized as a party that can bring this kind of an action. That's right. In addition to there's authority for the proposition. What's the basis under the APA? Well, and just one little footnote there, Your Honor, which is the case law also states, Lexmark states, that the prudential analysis, or really the zone of interest analysis, applies to statutes and not to non-statutory claims. So our claim for equitable stop on a court below would not be subject to the prudential, I'm sorry, the zone of interest analysis. But let me just close up this point, which is there is a conflict between Federal and State law, and why doesn't Federal supremacy resolve that conflict? Because, in fact, there is a statutory scheme, which is the Administrative Procedure Act, which says that when a party, such as Oakland, is harmed, is aggrieved by unauthorized or arbitrary, capricious or inappropriate conduct, by an agency, it can seek review if, one, there's final agency action, which there is here, and, two, if there's no other adequate remedy. Well, let's go back to Section 701A2. Let's start with first principles, and that is this chapter, meaning the Administrative Procedures Act, applies according to the provisions thereof, except to the extent that agency action is committed to agency discretion by law. And it seems to me that you're challenging the discretionary decision by the Attorney General and his United States Attorney in San Francisco to bring a civil in rem forfeiture action. Isn't that the end of the inquiry under the APA? If we conclude that that applies, you lose. No, because discretion is bounded by judicial review. Of what? The prosecutorial decision to initiate the action? And what standards do we attach to make that inquiry? The standard would be, as set out in the Administrative Procedure Act, which says that in Section 706, 5 U.S.C. 706, scope of review, the reviewing court shall hold on lawful and set aside agency action, findings and conclusions found to be, Big A, arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law, and, C, in excess of statutory jurisdiction authority. And I would say our case and our complaint is that in multiple ways the initiation of a forfeiture proceeding is contrary to law under one of those branches. Let me ask you a hypothetical, Mr. Childs. Suppose that the United States had proceeded by way of a criminal forfeiture and had added a count to an indictment charging manufacturing controlled substances, conspiracy to do the same, all the litany of criminal violations, and then in the last count of the indictment said, and we're seeking to forfeit to the United States the premises which are being used for the manufacture or distribution of controlled substances. Would you, would the city's position be that you could intervene in the criminal proceeding and ask to have the criminal forfeiture count stricken from the indictment? And by what authority would you bring such a claim? Well, first, I don't think that it's a tough hypothetical, but it's also not the set of facts before this Court. Well, but it's no different. The United States here is proceeding under the civil in rem forfeiture provisions of Section 881. Are they not? Which, I mean, the government gets to choose whether we bring a criminal forfeiture or a civil forfeiture action, but it's the same animal. I mean, to their credit, they could easily indict the owners and employees of the medical marijuana facility for conspiracy to distribute marijuana under 846, and they didn't. They took an easier approach and executed an in rem forfeiture. But anyway, I'd like to hear you answer the judge's question as to whether or not you would be able to intervene in the criminal case. The, in theory, perhaps, but that is not before us. That is not before us. And I think there will be tougher, a much tougher road to hoe for the city to say we want to intervene in a criminal proceeding. And fortunately, that's not before us. I don't know of any basis that would permit that. And as I hear your argument, the city's basis for trying to intervene because the government has chosen to initiate a civil forfeiture action is the APA. But I don't see why 701A2 doesn't bar that action from the get-go because it's no different for an agency, in this case, the Department of Justice, to decide we're going to proceed to a criminal forfeiture by presenting the matter to the grand jury versus we're going to proceed to initiate a lawsuit under 881 to accomplish the same thing, the forfeiture of the premises. Well, when you say the criminal, you, in your hypothetical, assuming individuals are indicted, is that in your hypothetical? Well, you, I mean, the indictment could name the entity as well. You could bring a continuing criminal enterprise charge against the dispensary, all of its officers, the people who work behind the counter, the people who provide security in the parking lot. They could all be named as co-conspirators. But, again, it's not, that's not before the court. We have an easier set of facts. But the forfeiture is the same. The only difference is one is under a criminal statute and one is under a companion civil statute. And I don't see how the agency's discretionary decision to initiate prosecution, civil or criminal, is any different involving real estate that's being used to further the distribution of narcotics. Well, if I could come, still come back to the question as you posed it. Under 701A, is it completely committed to discretion? Is there no bounds for judicial review? And the authority, case authority is that there is judicial review. And this Court in Port of Seattle v. FERC said that the exception under 701A2, the exception to judicial review is a very narrow one. And it's limited to circumstances in which there's no meaningful standard in which  I don't understand why the district court would have any authority to review this particular suit under the APA. You have an entirely 100% appropriate remedy at law, which is to simply intervene in the in rem asset forfeiture proceeding and assert your rights there. But the same difficulty in the intervention that you posit, Your Honor, is the same difficulty as there would be in filing a claim in a forfeiture proceeding, which is there is no ownership interest and it's admitted. There's no ownership interest in a property that's under forfeiture. So then you look at Article 3 standing and you have no injury, in fact, and you have no suit. I just don't understand what you're trying to get here. The City of Oakland has discrete injuries. And you just raised Article 3. Let me come back to that for just a minute. The discrete injuries are, among other things, number one, a cloud over the city's regulatory scheme. The regulatory scheme is very detailed. And there is case law for the proposition. Wait a minute. How does an in rem forfeiture action that's not final cloud the city's regulatory scheme? Because the very filing of the forfeiture action raises the question about the legality of the underlying scheme. And in the complaint ---- It doesn't address the city's regulatory scheme at all. It's going after, in the eyes of the Federal Government, people who are distributing controlled substances in violation of Federal law. In addition to that, it is saying that the dispensary, which is operating on Oakland property under the Oakland's regulatory scheme, which is, in fact, an implementation of the state's medical marijuana legislation. They own their own property. I'm sorry? This isn't city property that they're operating on. Correct. That's right. Yeah. So what interest do you have in vindicating their property rights? They have their own interests in vindicating their own property rights in the in rem forfeiture proceeding. But you're exactly right. The city is not seeking to vindicate any right in that particular real property. The city is seeking to vindicate its right in, number one, the regulatory scheme. Taxing illegal revenue from drug dealing. That's what you're talking about. Tax revenues from medical marijuana sales to an interest in the regulatory scheme. And there is ---- Okay. And you can collect that right up until the time that the Federal Government is successful in their forfeiture proceeding, correct? It is being collected. And the district court did ---- No injury in effect. You do not have to wait until the actual last moment to have injury. You can have prospective injury. Why wouldn't the city's claim to the revenue fall to the government's claim to the revenue if it is successful in the forfeiture action? Because as I understand forfeiture law, if the government succeeds, then the money reverts, title to the money reverts to the time of the wrong, the distribution of the controlled substance. So it's now the Federal Government's money that the city is seeking to tax. And the city is not going to be able to succeed in a civil forfeiture claim because it can't say that it was ignorant and it was a bona fide purchaser for value, so to speak, when it sought to tax those revenues because it knows that these are revenues from the sale of controlled substances. So it's not innocent in terms of civil forfeiture law. So where is the city harmed here? It doesn't have any right to the money. Well, two responses. Number one, the government has not brought a ñ this forfeiture claim is not directed to the tax revenues. That's not before the court. Second ñ The government is seeking all of the revenues, which are proceeds of the sales, and if it succeeds in the civil forfeiture action, the court will enter a decree saying that that money ñ all of it, 100 percent of it ñ belongs to the United States. That's not yet clear. Well, isn't that the result of the forfeiture action if the government succeeds? The forfeiture action, as I understand it, is directed to the real property. It's directed at that real property, which is the building. They have not said that the tax revenues from ñ that they've been collected by the city are subject to forfeiture. So they're not going to go after the $20 million that's being generated? Well, I don't know what the government's going to do. I don't know what the government ñ but that's not before us. You don't think that that claim is fairly subsumed within their complaint for forfeiture? Well, I can ask. Yeah, you can ask them. You wanted to save five minutes? Can I just respond to one minute? Yeah. Which is you did speak to, well, what is the government ñ what is the city's interest? Well, in fact, in the district court below, we have ñ we said the government has overstepped its bound, acted without authority. One of those bases is equestoppel. And there's a long pattern of representations by the government in writing, in orally, and by their pattern of non-prosecution for six years that gave the city reasonable basis to believe that its program would be allowed. And, frankly, everything else, including the materials that are before this court by motion for judicial notice, indicate that when the deputy attorney general goes before the Senate, he says the same thing. We're not going to prosecute. When Congress passes the legislation, they say the Department of Justice will not use any of these funds for doing exactly what they're trying to do, which is proceed to forfeiture. You're making an argument to the Congress to legalize the use of marijuana for medical purposes, and that's entirely proper. But I don't think any of those materials speak to the judgment we make about whether or not this case is proper under the APA or Lujan standing. All right. I will reserve my time. Thank you. Okay. Very well. Let's hear from the United States. Adam Jedd for the United States. May it please the Court. Judge Tallman, just to answer your question, I believe that the civil forfeiture action that has been filed is just seeking to forfeit the physical real property and is not seeking to forfeit anything that Oakland presently owns. And I think that really underscores the limitless nature of Oakland's theory, because my friend stands up here and he repeats some of his underlying merits arguments about why it is that he thinks the forfeiture action is proper or isn't proper. But that's not the issue before the Court today. The question is just whether those arguments can be raised in a collateral attack or instead whether they need to be raised in the actual forfeiture action where Congress has set up a procedure for deciding whether something will be forfeited and for individuals who have a property interest to be able to raise the defenses that they see fit. But the city doesn't have an interest in the real estate, Mr. Jedd. Their interest is, as they say, in being able to regulate in a controlled and safe environment the dispensing for humanitarian purposes to people whose pain is alleviated by the use of marijuana to address their medical problem. That's exactly their argument, Your Honor. And I think that theory of why it is that they can collaterally attack, whether it be a civil forfeiture action or a criminal prosecution or a regulation or anything else, is actually just squarely foreclosed by applicable precedent. Let me just kind of break that down into two different categories. First, to the extent that the city claims that it is Article III standing under this theory that the city is regulating something and that thing that they're regulating won't be able to operate as well as it used to operate, I'd direct this Court to the case I did on our brief, the Oregon v. Legal Services case, where the State of Oregon made basically the exact same argument that the city is making here. The State of Oregon had set up a regime for regulating legal practice. It was actually trying to encourage legal organizations to merge in a particular way as a result of what actually there was final agency action by the federal government. The consequence would be that those legal organizations in Oregon would not Why have you picked this fight? The United States government, the President, the Attorney General, and the Justice Department is largely looking the other way in terms of medical marijuana facilities. You certainly could have prosecuted these people along the lines of what Judge Tolman had laid out. You haven't done so, and the people of California have spoken on the issue, and yet you want to pick a fight on a legal issue that's now involved the Ninth Circuit, the District Court, on something that you could effectively address in any number of ways, and yet you chose this one. I mean, what's the endgame here? Well, two answers, Your Honor. Of course, as the Court is aware, in this case, it's the City of Oakland that's picking a fight, and the question here is just whether the City of Oakland can raise the kinds of challenges that it's raising. As to why it is that the U.S. Attorney's Office brought the separate civil action, the one that Oakland is now trying to collaterally attack, to be honest, Your Honor, I don't know exactly why it is that the U.S. Attorney's Office made the decision, and I actually think it's quite striking that here in Oakland's that the decision to initiate that civil action would be subject to complete APA review. And he listed the various items in 5 U.S.C. 706, which means that in his view, even in the separate action, something that ordinarily would not even be allowed in the forfeiture action, courts should be analyzing the motivation behind this decision, should be looking for consistencies or inconsistencies. And if I could, by the way, just push back on Your Honor's premise just a little bit, some of the various testimony and memos that my friend has cited do not categorically say that there won't be any civil or criminal actions brought with respect to the Controlled Substances Act. Rather, I think they just lay out what the government believes is an efficient use of federal resources. It discusses how it is that resources generally should be focused or shouldn't be focused. And indeed, I actually think the Ogden memo that my friend relies on specifically refers to resource focus on individuals. I like it when lawyers push back. That makes us think about things. And it seems to me that wouldn't U.S. Attorney Hogg have consulted with Deputy Attorney General Cole before going in and filing a civil asset forfeiture action against one of the major municipalities in the nation against a law like this? Your Honor, I don't know exactly what kind of deliberation occurred before that decision was made. You don't think the United States Attorney consulted with the Justice Department at all before they brought this action? Your Honor, that sounds entirely plausible, but I'm just, as a matter of fact I'm very surprised if the answer to that question was no. I don't definitively know the answer. And by the way, to the extent that I sort of would have any information about that, obviously kind of deliberative process that goes on leading up to a decision to initiate litigation is not the kind of thing that ordinarily, you know, we could make public. But all of the Well, you could say generally what the practice is regarding these. I think we're pretty familiar with the administrative process. Sure. So as the Court is well aware, obviously the Department has stated its policies on efficient use of resources and where it is that resources should be focused or shouldn't be focused. But none of that is at issue in this case. The question in this appeal is whether Oakland can collaterally attack that civil action which has been filed. We're trying to figure out what's underlying this whole debate between the parties. In light of the public pronouncements that have been made by the Department of Justice, it's a little curious that we're here in this case. And that's why we were querying what's the underlying basis for this case. Your Honor, I'm certainly not trying to make light of that concern at all. All that I am just trying to flag is the question in the plaintiff's appeal is whether the plaintiff's action is a proper one. I mean, there may be a separate debate as to whether these kinds of issues of consistency or DOJ policy could be raised in the forfeiture action. But here, the sole question is whether Oakland, a city that has no property interest that is outside of the category of individuals who Congress set out to be able to contest an ongoing forfeiture, can nonetheless collaterally attack it. And indeed, I think it's quite odd, would end up with a broader right to attack the forfeiture than the set that Congress actually said has an interest. Because if you own the dispensary, if you have a property interest in the dispensary, if you have a mortgage in the dispensary under the applicable statute, as the district court pointed out, you have 30 days to file an objection. Under Oakland's theory, because they have less of an interest, they have six years not even just to file an ordinary objection, but actually to go after the U.S. Attorney's office who have brought the action in the first place. So why does that then take us back to 701A2? I think it does, Your Honor. To be honest, I mean, I think the question of how this appeal should be resolved is almost overdetermined. I think Oakland doesn't have Article III standing. They don't have prudential standing. As Your Honor points out, we agree also what they're targeting is committed to agency discretion. It's also governed by an exclusive scheme which creates problems under 701 and also 702 and 704. Well, are you conceding that this is an agency decision that can be challenged under the APA, then? We're not, Your Honor. One of the other arguments that we've made is that this does not constitute final agency action. The term final agency action does not kind of colloquially mean some agency made up its mind, but rather has a specific meaning under the APA, which is that someone's rights or obligations have been determined. Here, filing a civil action, much like filing a motion to dismiss or filing a criminal action, doesn't determine anyone's rights or obligations. It just invites the court to determine someone's rights or obligations. And the fact that the plaintiffs are not able to essentially sue the court under the APA doesn't mean that it can start stepping back in that kind of chain and go after anyone who made a decision. I mean, just to make this very simple, we're just talking about prosecutorial discretion here, are we not? I think that's correct. I mean, because this is a civil action, it might sort of more be understood as litigation discretion. But yes, I agree with Your Honor that this is committed to agency discretion. I mean, I do share my colleague's concern about the President takes an oath to see that the laws shall be faithfully enforced, and then the President and the Attorney General and the Deputy Attorney General make public comments that, well, we're going to reallocate our resources and we're not really going to enforce these marijuana laws. And then the United States Attorney in San Francisco brings a civil forfeiture action against a medical marijuana dispensary. Two responses, Your Honor. The first is even to the extent that somebody may disagree with the way that the President is enforcing law or the way that another Federal officer is enforcing law, it doesn't mean that they automatically get to go into court and create a case or controversy about it. They need to have standing. There needs to be a waiver of sovereign immunity. Those are the issues that are before the court in this case. To the extent that Your Honor does separately want to discuss the applicable policies, I do just want to point out that I think the plaintiffs have grossly misrepresented some of the statements by the government. These statements, the memos that plaintiff has referred to, testimony by then candidate or excuse me, a public statement by then candidate Obama, described what it thought would be efficient use of government resources and made clear. I mean, if you look at the Ogden memo that I believe the plaintiffs have actually included in their excerpts of record, it makes clear this should be not, not be taken as a policy. This should not be taken as a commitment. So it is a little bit odd, then, for the plaintiffs to be standing up there and saying, aha, we have a policy, we have a commitment. But none of that is at issue in this appeal. Well, I mean, it seems to me that the short answer is if the President is not happy with the decision of the United States attorney, there's a very simple solution to that problem, and that is to ask the United States attorney for a letter of resignation. Your Honor, obviously, I don't want to suggest that specific remedy, but you're certainly right. To the extent that Department of Justice attorneys are making decisions, there's obviously a chain of command. And if someone thinks that a decision is an improper one, obviously, the Department of Justice has a number of ways to correct that. As far as we know, at least in this record, that hasn't happened. Not that I'm aware of, Your Honor. All right. Well, in an analogous context, in the immigration context, for instance, we get communications from the Department of Justice saying our resources are going to be allocated toward deporting those undocumented individuals who have criminal records. And so in reliance on that, we have, you know, sent cases to mediation or deferred ruling on cases. So why isn't this somewhat analogous to that circumstance, where we've received sort of representations from the government regarding how the resources are going to be expended in the immigration context, and we've relied on those and the parties have relied on those to fashion our relief in cases? Why isn't this analogous? Your Honor, unfortunately, I don't know the underlying details of the kinds of communications that immigration officials have with the court. But if you accept my description of that. Your Honor, if I accepted your description of that, then the analogy would seem to be if the City of Oakland filed a lawsuit against the Attorney General saying that someone who lives in the City of Oakland might get deported and that they want to collaterally attack whatever ongoing immigration action is happening there. And that through some kind of highly speculative system in which they might regulate that individual, they think it will somehow harm the City of Oakland. You know, obviously, I don't want to sort of dig too far into that hypothetical, but it would seem like there wouldn't be Article III standing. There wouldn't be prudential standing. That suit would not be allowed under the APA. The issue would be committed to agency discretion. All of the same points that are at issue here. I know that my friend wants to kind of bring into this court a debate about the way that the Department of Justice enforces the Controlled Substances Act. But what the APA and Article III and prudential standing doctrine all make clear is the fact that you want to have that debate in court does not mean that you get to have that debate in court. As an initial matter, it needs to be a proper suit. The district court offered two grounds. That goes back to the original question that seems to be the sense of the panel, which is, you know, if all those things are as they are, it would no doubt be more effective to have. If the Justice Department isn't going to do anything criminally about medical marijuana facilities, respecting the rights of the voters to have these sorts of regulatory schemes in place in places like California, it would seem to me that you would want to have officials in cities like Oakland regulating and overseeing the dispensation of marijuana rather than a bunch of drug dealers. And if you want that, you certainly don't want to start a fight with them by bringing in asset forfeiture action that's resulted in all this. Right? Your Honor, that sounds like the kind of policy argument that Oakland is making here. This isn't a proper venue for that policy argument. I would be happy to communicate that policy point back to folks at the Department of Justice, if you would like. They're not going to listen to a mere district judge from Detroit, so I don't think you need to do that. On a different note, counsel, do you object to the motion to take judicial notice of the Appropriations Act? We do not, but let me just put a little footnote on that comment. We filed a response to the motion to take judicial notice. Of course, a court can take judicial notice of a statute. In fact, it's usually not thought of as judicial notice. It's just thought of reading the applicable law. Well, that's a question whether or not the law is applicable, because it's after the fact. So that's why I asked you the question. Well, it's law that's out there. Just taking judicial notice just means a court is aware of a law, and of course a court can be aware of law. To the extent that the plaintiffs have argued that as a consequence of this law, they somehow have Article III standing where they did not previously have it, the law does not purport to create any standing. It does not purport to create any right. The sort of Supreme Court terminology for attempting to create standing is to create a right, the invasion of which would constitute an Article III injury. The plaintiff's motion to take judicial notice is a little bit unclear about what else they're saying with respect to Section 538. If they are somehow saying that they fall into the zone of interest of Section 538, I should say it's actually not necessary for the court to reach the zone of interest inquiry at all. It can rule on any of the, I think it's four, APA grounds that we've offered or Article III standing. Or, by the way, the other prudential standing argument we've made is a third-party prudential standing argument that I think the plaintiffs haven't really even responded to in their reply brief. But I think Judge Tallman raised this question as well. If they are somehow claiming that they fall into the zone of interest of 538 because that wasn't the legal provision that was invoked in the suit, that would not matter here. In some future suit, if they pointed to that, then there could be a separate debate whether they fell into the zone of interest or not. Ginsburg-McCabe. Your answer to my question is no, there is not an objection to taking judicial notice of the law itself. I just want to make sure I understand what it means to be taking judicial notice. My understanding of taking judicial notice is just being aware of the fact that that law exists. No, we have no objection. All right.  Unless the Court has any other questions. I do not. Thank you, Your Honor. I think not, Mr. Chairman. Mr. Chow, I think you have about three minutes. I'll be very brief. I see very little time. Well, our briefs do set forth our view that there is Article III standing and I didn't have enough time in opening, but we set out three concrete bases for standing. We think standing is a relatively easy barrier. The issue of prudential standing, which is really zone of interest, there is case authority from the Supreme Court saying this is an easy standard. We submit that. And the Section 538 actually gives another basis for the zone of interest. And, in fact, on remand, that may give another basis, if there is remand, another basis for amending the complaint. What's your response to opposing counsel's observation that those are all policy arguments and not legal arguments, the arguments that you've made to support your standing? These are concrete injuries, injuries such as the interest of the city to have a regulatory scheme, which it has implemented and now that's impacted, the interest in tax revenues, but the interest also in having safe streets and having healthy citizens. Health and welfare is clearly not, it's more than a policy interest. It's actually gives it standing. And the problem is you don't have an interest in the particular property that's thought to be forfeited, and that's generally what confers standing in a forfeiture action. And that's exactly, I'm glad you raised that, that's exactly why the APA fits this case like a glove, because if you have no other adequate remedy in court, which we don't, the court said it doesn't, and if there's final agency action, which there is, then there's presumption of reviewability of the agency action. What is the final agency action in this case, from your perspective? The final agency action is the decision to initiate forfeiture proceedings, and that is the consummation of the decision-making of the Justice Department. There's nothing else. They are proceeding straightforward. But that doesn't determine any rights or obligations, that's the problem. It doesn't determine the rights or obligations of the claimants who have an interest in a property, that their rights will be determined during the forfeiture proceedings. But the right to the agency, that's done by the court. That's done by the court, but the city is very distinct. The city has distinct grievances, distinct interests, and distinct relief that it's seeking from that of the claimants. The claimants are seeking, hold on, I need an order, don't take my real property. What is city saying? We have no interest in a property. This is just like the Patchak case in the Supreme Court. We don't have an interest in a property, but what we want you to do is preserve our regulatory scheme, preserve our ability to protect our people, preserve and allocate our scarce police resources. Those are very, very distinct. Why is that unique to the current use of the property? For example, your revenue argument. If the government succeeds and title the property forfeits to the United States, the property will eventually be sold at auction unless the government wants to hang on to it for some reason. And then another business will move in there that may generate revenue for the city. So how is the city's revenue interest harmed, or did they like this particular revenue because it's generating $20 million a year in taxable sales? The rate, and this is in the record, the rate applied by statute, by ordinance, to marijuana sales is 5%. It's a higher rate than is true for other type of retail establishments. So their argument that you can mitigate your losses by putting another tenant does not come true. Okay, I think we have your arguments in mind. You are out of time. I thank both sides for a case that was very well argued. The case just argued is submitted for decision. We'll decide it as quickly as we can. Thank you all, and we stand adjourned for the day. All rise. Hear ye, hear ye. All persons acting as witnesses in honor of the United States Court of Appeals for the Ninth Circuit will now depart. For this session, now stands adjourned.
judges: Murphy, Tallman, Rawlinson